IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BESSIE MAE HAYES                                                              PLAINTIFF

V.                                    NO. 15-2186

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Bessie Mae Hayes, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff filed her application for DIB on November 15, 2012, alleging disability since September 26, 2012,[1] due to poor memory, anxiety, manic depressive disorder, glaucoma, and high blood pressure. (Tr. 140-146, 170, 174). An administrative hearing was held on December 9, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 23-43).

By written decision dated May 23, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – hypertension, hearing loss, glaucoma, obesity, and mood disorder. (Tr. 10). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did

---

[1] At the hearing, Plaintiff amended her onset date to November 1, 2012. (Tr. 27).

1

not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 11). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot perform work that would require excellent hearing but can perform work requiring only frequent near and far acuity and is able to occasionally operate foot controls bilaterally. Nonexertionally, the claimant can perform work in which interpersonal contact is incidental to the work performed and the complexity of tasks is learned and performed by rote, with few variables and little judgment. The supervision required is simple, direct and concrete.

(Tr. 12). With the help of a vocational expert (VE), the ALJ determined Plaintiff was capable of performing her past relevant work as a fiber gluer. (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on July 23, 2015. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 11, 12).

**II.     Evidence Presented:**

Plaintiff was born in 1949, and prior to her onset date of November 1, 2012, had been treated by Dr. Philip Elangwe, of Family Medical Care Clinic, Dr. Donald Chambers,  Dr. Robert Knox, of the Eye Group, and Dr. Andrew W. Lawton, of Neuro-Ophthalmology, for abdominal pain, dysthymic disorder, hypertension, esophageal reflux, glaucoma, depression, and hyperlipidemia. (Tr. 262, 264, 267-268, 271, 273, 276-283, 288, 296-301, 303, 336, 359-360, 385-387).

Subsequent to her onset date, Plaintiff continued seeing Dr. Chambers concerning her depression. On November 7, 2012, Dr. Chambers reported that Plaintiff had been off work for six months and did not think she was going back. He reported that she had been

worsening steadily with her husband's dying process and that by the time it finally happened, she mentally collapsed and had not made any significant recovery. (Tr. 338). Dr. Chambers adjusted her medication, and noted that she lost her train of thought and had difficulty getting things done. (Tr. 338).

Plaintiff presented herself to Dr. Elangwe on November 28, 2012, with problems relating to mixed hyperlipidemia, essential hypertension, unspecified, and lumbago. (Tr. 305). On November 29, 2012, Plaintiff saw Dr. Chambers, complaining of having a "spell" of her eyes jerking. (Tr. 340). Dr. Chambers believed she was having a sleep phenomenon that caused the spell, her medication was adjusted, and she was to return in one month. (Tr. 340).

On November 30, 2012, Dr. Elangwe reported that Plaintiff's hypertension was well controlled, and that Plaintiff's lab results were essentially normal except for a fasting glucose of 119. (Tr. 306). Plaintiff was diagnosed with essential hypertension, unspecified, lumbago, and mixed hyperlipidemia. (T. 306). Dr. Elangwe again reported that Plaintiff's hypertension was well controlled on December 12, 2012. (Tr. 371). At that visit, Dr. Elangwe reported that Plaintiff's hemoglobin A1C was 6.9, and her glucose was 119. Plaintiff told Dr. Elangwe that she normally just ate one meal per day, sometimes she ate breakfast, but mostly ate one meal a day. She reported she still had some anxiety, but was working through it. (Tr. 371). Plaintiff was diagnosed with essential hypertension, unspecified; lumbago; mixed hyperlipidemia; and diabetes mellitus without mention of complication, Type II or unspecified type, not stated as uncontrolled. (Tr. 372). Dr. Elangwe reported that he discussed with Plaintiff the lifestyle changes that would be reasonable to try to bring her glucose under better control. Plaintiff responded that she felt like she probably would not do

3

that and would rather just try medication. He discussed with her the need to eat at least three meals per day and how that could help her with her weight gain, and also discussed exercise and taking Metformin every morning. Plaintiff preferred to do that rather than make the lifestyle changes. (Tr. 372).

On December 19, 2012, Dr. Chambers reported that Plaintiff would not be returning to work as a CNA at Sparks Hospital, and that she could not remember what she was supposed to do, could not concentrate on what she was doing, was fearful and making mistakes. (Tr. 342).

On January 7, 2013, at the request of the Arkansas Social Security Administration, a Mental Diagnostic Evaluation was performed by Patricia J. Walz, Ph.D. (Tr. 310). Dr. Walz noted that Plaintiff wore bilateral hearing aids, but could hear her fine. (Tr. 310). She also reported that Plaintiff had been receiving Social Security retirement but had applied for disability benefits. Dr. Walz noted that Plaintiff would lose her train of thought, and was seeing Dr. Chambers, who thought she had emotional problems. Dr. Walz also noted that no one had mentioned dementia, and that Plaintiff had been seeing a counselor at Dr. Chambers' office since April of May of 2012, and was taking Trazodone, Neurontin, and Viibryd for sleep. (Tr. 310). Dr. Walz reported that Plaintiff had been diagnosed with glaucoma, had hypertension which was well managed with medication, and needed no assistance with her activities of daily living. (Tr. 312). Plaintiff reportedly cooked from scratch and had not noticed a change in her cooking ability, although she did occasionally leave a pan on the stove. (Tr. 312). Dr. Walz diagnosed Plaintiff as follows:

Axis I: Major depression, recurrent, moderate to severe without psychosis
Rule out early dementia

4

    Axis II:  No diagnosis

    Axis V/GAF: 50 to 55 based on significant vegetative symptoms

(Tr. 314). Dr. Walz reported that Plaintiff had trouble with her peripheral vision because of her glaucoma, was able to shop independently, had friends, did mission work at church, picked up people from church or went to pray with them, and attended church regularly. (Tr. 314). Dr. Walz also reported that Plaintiff's social skills were adequate; her speech was sometimes difficult to understand in that she tended to mumble; her intellectual functioning was thought to be in the 75 to 85 range; her attention and concentration were impaired to the point that it would impede her ability to function on the job; she persisted well; the speed of information processing was a bit slow; and she had some difficulty with basic arithmetic tasks. (Tr. 314-315). Dr. Walz recommended a neuropsychological evaluation. (Tr. 315).

  On January 23, 2013, Dr. Knox, of the Eye Group, reported that Plaintiff had open angle glaucoma, which was controlled with topical medication, including Travatan Z at bedtime in each eye, as well as Alphagan in each eye twice daily. (Tr. 318). He further noted that this was a chronic condition and possibly progressive in the future, and required continued regular follow up every four months, as her control had been inconsistent at times in the past. (Tr. 318). She had no diabetic retinopathy, and was instructed to continue her topical medications to continue to control her glaucoma. (Tr. 318).

  On January 24, 2013, Dr. Chambers reported that Plaintiff was "fairly stable, better than she was." (Tr. 344). She was taking Neurontin 300 mg. a day, Viibryd 40 mg. a day, and was going to stay on those medications. (Tr. 344). Dr. Chambers reported on February 5, 2013, that there would be no change in her treatment. (Tr. 345).

5

On March 21, 2013, Plaintiff saw Dr. Randall B. Davis, of Fayetteville-Springdale Ear Nose & Throat Clinic, regarding her hearing loss. (Tr. 323). It was noted that Plaintiff's hearing aids helped her considerably, although she still had times of frustration because she had words that she misunderstood. (Tr. 323). Dr. Davis recommended Plaintiff should avoid loud noise and get another hearing test in three to five years or sooner if her hearing changed. (325).

On March 27, 2013, non-examining consultant, Jon Etienne Mourot, Ph.D., completed a Psychiatric Review Technique report, finding that Plaintiff had moderate limitation in activities of daily living and in maintaining concentration, persistence or pace; had mild limitation in maintaining social functioning; and had no repeated episodes of decompensation, each of extended duration. (Tr. 52). She also concluded that Plaintiff would be capable of performing unskilled work. (Tr. 56). On that same date, non-examining consultant, Dr. Charles Friedman, completed a RFC Assessment, finding that Plaintiff had no exertional, postural, manipulative, or visual limitations, but did have communicative limitations, and that her hearing was limited in both ears. (Tr. 53). He recommended no work requiring excellent hearing. (Tr. 53).

On April 10, 2013, Dr. Elangwe reported that Plaintiff had good sugar control; her hypertension was controlled; and her repeat blood pressure was 122/84. (tr. 375). She was diagnosed with diabetes mellitus without mention of complication, type II or unspecified type, not stated as uncontrolled; essential hypertension, benign; anxiety stated, unspecified; and mixed hyperlipidemia. (Tr. 376). Dr. Elangwe reported they would continue her present medications. (Tr. 376). On April 15, 2013, Dr. Elangwe again reported that Plaintiff's

6

hypertension and diabetes were well controlled, and her reflux was stable. (Tr. 379). Plaintiff was to continue with all of her present medications. (Tr. 380).

On April 18, 2013, Plaintiff presented to Sparks Emergency Room, complaining of throat pain, and was diagnosed with pharyngitis, uvular hydrop. (Tr. 351).

On June 10, 2013, non-examining consultant, Dr. Steven Strode, affirmed the March 27, 2013 Physical RFC assessment, and non-examining consultant, Susan Daugherty, Ph.D, affirmed the recommendation that Plaintiff could perform unskilled work. (Tr. 72-75).

On July 11, 2013, Plaintiff went to Good Samaritan Clinic for care. (Tr. 412). On August 1, 2013, Plaintiff was assessed with diabetes mellitus, depression, hypertension, esophagitis, and right shoulder pain. (Tr. 438). An x-ray was taken of Plaintiff's right shoulder, and revealed degenerative changes in her right shoulder with pain, and an injection was given. (Tr. 437). .

On September 2, 2013, a diagnostic evaluation was performed by William Fretwell, LPC, at Western Arkansas Counseling and Guidance Center. (Tr. 414). Plaintiff was assessed with anxiety disorder, and given a GAF score of 54. (Tr. 417). A Psychiatric Assessment by Colleen Atchley, APN, was performed on September 24, 2013. (Tr. 418). It was reported that Plaintiff was treated by Dr. Chambers until she lost her insurance and could no longer afford visits or medications. Plaintiff was diagnosed with mood disorder, nos, and given a GAF score of 60. (Tr. 420).

Plaintiff was seen at Good Samaritan Clinic on September 30, 2013, complaining that after she increased her Metformin, she had nausea, vomiting, and diarrhea, and was told to return to her prior dose. (Tr. 435).

On October 22, 2013, Plaintiff reported to Colleen Atchley, APN, that she was feeling calmer and less restless while taking Depakote ER, and it was noted that she was "remarkable[sic] brighter and seems more cognizant in her responses today." (Tr. 422).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

8

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §404.1520, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**IV.   Discussion:**

Plaintiff argues that the ALJ should have had Dr. Walz complete a Medical Source Statement outlining the work-related limitations that arise from Plaintiff's mental impairments, and that as Dr. Walz recommended a neuropsychological evaluation, such an evaluation should have been performed.

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995);  Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).  This is particularly true when Plaintiff is not represented by counsel.  Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994).  This can be done by re-contacting medical sources and by ordering

additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."  Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No.  13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

In his decision, the ALJ acknowledged that Dr. Walz found Plaintiff's ability to function on the job would be impeded by her impaired attention and concentration and her processing speed was a bit slow. (Tr. 17). He also gave substantial weight to Dr. Walz's opinion, but failed to mention any restrictions regarding attention, concentration, and speed in his RFC. The ALJ reasoned that Plaintiff stated in her Function Report she had never had problems keeping a job and was almost always employed. (Tr. 12). However, this rationale does not take into consideration the fact that Plaintiff may not have had memory, attention, concentration or pace problems during her employment, and the fact that Dr. Walz also recommended Plaintiff undergo a neuropsychological examination. The ALJ did not obtain

the neuropsychological examination, and under the circumstances of this case, the Court believes such an examination is necessary.

Based upon the foregoing, the Court recommends that this matter be remanded to the ALJ for Plaintiff to undergo a neuropsychological examination and to obtain a Mental RFC Assessment by the examining physician in order to determine Plaintiff's ability to function in the workplace during the relevant time period. He should also ask Dr. Walz for clarification regarding the extent Plaintiff's impaired attention, concentration, and ability to process slowly affected her ability to function in the workplace. He may do this by requesting Dr. Walz to complete a Medical Source Statement. Thereafter, the ALJ should re-evaluate his RFC.

### V.     Conclusion:

Accordingly, the Court recommends that this matter be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 7th day of April, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

11